**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Shenzhen Sailvan Network Technology Co., Ltd. <br><br> And <br><br> Sailvan Times Co., Ltd <br><br><center>Plaintiffs</center><br><center>v.</center><br> Does 1-101 <br><br><center>Defendants</center> | CIVIL NO. 4:25-cv-00722-JCB <br><br><br> **EX PARTE AND UNDER SEAL** |

**PLATINTIFFS' EX PARTE MOTION FOR, AND MEMORANDUM IN**

**SUPPORT OF, ENTRY OF A (1) TEMPORARY RESTRAINING ORDER,**

**(2) ASSET RESTRAINING ORDER, (3) EXPEDITED DISCOVERY ORDER, AND**

**(4) ORDER PERMITTING ALTERNATIVE SERVICE VIA EMAIL**

# FILED UNDER SEAL

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... - 1 -

II.    FACTUAL BACKGROUND ................................................................... - 2 -

    A.   Plaintiffs' Trademark Rights ........................................................... - 2 -

    B.   Defendants Willfully Use Plaintiff's Trademarks Without Authorization ............... - 3 -

III.    ARGUMENT ....................................................................................... - 5 -

    A.   Plaintiff Is Entitled to Ex Parte Relief .......................................... - 5 -

    B.   A Temporary Restraining Order and Preliminary Injunction Are Warranted in This Case **Error! Bookmark not defined.**

        i.    Plaintiffs Are Likely to Succeed on Merits .............. **Error! Bookmark not defined.**

        ii.   Defendants' Actions Impose a Significant Risk of Irreparable Harm to Plaintiffs - 12 -

        iii.   Balance of Equities Favors Plaintiffs ................................................. - 12 -

        iv.   Public Interests Favors a Temporary Restraining Order and a Preliminary Injunction ................................................................................. - 13 -

    C.   Equitable Relief in the Form of Asset Restraint Is Appropriate and Necessary ..... - 13 -

        i.    An Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Sailvan Marks is Appropriate and Necessary ................................................. - 13 -

        ii.   An Order Preventing the Transfer of Unlawfully Gained Assets Is Appropriate - 14 -

    D.   Plaintiffs are Entitled to Limited Expedited Discovery ......................................... - 15 -

    E.   Service of Process by Email is Warranted in This Case ....................................... - 17 -

        i.    The Court May Authorized Service via Email and Website Posting Pursuant to Fed. R. Civ. P. 4(f)(3) ................................................................................. - 17 -

        ii.   The Proposed Alternative Service Comports with Due Process ........................ - 18 -

        iii.   Email Service Is Appropriate Pursuant to Fed. R. Civ. P. 4(f)(3) and Comports with Due Process Under the Special Circumstances of This Case ...................................... - 20 -

IV.    A MINIMAL BOND IS SUFFICIENT TO SECURE THE INJUNCTION ........... - 21 -

V.    CONCLUSION ................................................................................... - 21 -

## TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13- CV-369, 2014 WL 11342502 (W.D. Tex. 2014) ........................................................................................ - 20 -

*Amstar Corp. v. Domino Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980)............................. - 10 -

*Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed. Appx. 707 (5th Cir. 2007)..... - 15 -

*Bd. of Supervisors for La. State Agric. & Mech. College v. Smack Apparel*, 550 F.3d 465 (5th Cir. 2008) ........................................................................................... - 11 -

*Better Keiki, LLC v. HOUSEWARE*, 18-cv-226, 2018 WL 3603065 (E.D. Tex. May 14, 2018)....................................................................................................................... - 6 -

*BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co.*, No. 1:22-cv-278-RP, 2022 WL 5568332 (W.D. Tex. Apr. 21, 2022)................................................................ - 14 -, - 15 -

Cf. *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166 (5th Cir. 1986)....................... - 11 -

*Chanel, Inc. v. Partnerships & Unincorporated Ass'n Identified in Schedule A*, No. H-12-2085, 2012 WL 3527047 (S.D. Tex. Aug. 14, 2012)................................... - 14 -, - 15 -

*Chanel, Inc. v. Zhibing*, 2010 WL 1009981 (W.D. Tenn. Mar. 17, 2020) ................... - 20 -

*Clarity Sports International, LLC v. Redland Sports*, 2021 WL 228896 (E.D. Mich. Jan. 22, 2021)................................................................................................................ - 20 -

*CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, No. 99-cv-7249, 2000 WL 715601 (N.D. Ill. June 2, 2000) ............................................................................................................ - 7 -

*Dent Zone Network, LLC v. Heritage Admin. Co.*, 4:03-cv- 195, 2003 WL 21183706 (E.D. Tex. May 21, 2003) ............................................................................................ - 7 -

*DirectTV, LLC v. WNK Associates, Inc.*, 2023 WL 2025039 (E.D. Tex. Feb. 15, 2023)- 20 -

*Elvis Presley Enterpr. Inc, v. Capece, 141 F.3d 188, 193 (5th Cir. 1988)* ..- 8 -, - 9 -, - 10 -

*F.T. Int'l Ltd v. Mason*, No. 00-cv-5004, 2000 WL 1514881 (E.D. Pa. Oct. 11, 2000). - 7 -

*Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473 (E.D. Tex. 2020) .............................................................................. - 13 -

*Future Proof Brands, L.L.C. v. Molson Coors Beverage Company*, 982 F.3d 280 (5th Cir. 2020) ..................................................................................................................... - 8 -

*Gramercy Ins. Co. v. Kavanagh*, No. 3:10-CV-1254-D, 2011 WL 1791241 (N.D. Tex. 2011) ..................................................................................................................... - 19 -

*Granny Goose Foods, Inc. v. Bd. Of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423 (1974) .......................................................................................................... - 6 -

*Juan Yang v. Does 1-89*, NO. 4:24-CV-922-SDJ (E.D.Tex. December 4, 2024) - 18 -, - 21 -, - 22 -

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996)......................................... - 22 -

*Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995) ................. - 16 -

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................ - 19 -

*Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. CIV.A. H-06-2683, 2007 WL 2964817 (S.D. Tex. 2007)............................................................................................ - 19 -

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).......................................... - 16 -

*Ouyeinc Ltd. v. Alucy*, No. 20-cv-3490, 2021 WL 2633317 (N.D. Ill. June 25, 2021) - 21 -

*PAAKline, LLC v. Dongguan Airuise Trading Co., Ltd.*, No. 1:22-cv-1082-LY, 2022 WL 18110060 (W.D. Tex. Nov. 29, 2022) ............................................................ - 14 -, - 15 -

*Quantum Fitness Corp. v. Quantum LifeStyle Centers, LLC*, 83 F. Supp. 2d 810 (S.D. Texas 1999)..................................................................................................................... - 8 -

*Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989)............... - 16 -

*Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ................................. - 19 -

*RPost Holdings, Inc. v. Kagan*, No. 2:11- CV-238-JRG, 2012 WL 194388 (E.D. Tex. 2012) ........................................................................................... - 18 -, - 19 -

*Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477 (5th Cir. 2004) .................. - 12 -

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Circuit 1996) ............................ - 11 -

*Sino Star Global Ltd. v. Shenzhen Haoqing Technology Co., Ltd.*, 2023 WL 2759765 (E.D. Tex. April 3, 2023) ........................................................................... - 20 -

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440 (5th Cir. 2017)...- 8 -, - 10 -

*Viacom International v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018) ............................................................................................. - 10 -, - 12 -

*Viahart, LLC. V. GangPeng*, 2022 WL 445161 (5th Cir. Feb. 14, 2022) ..................... - 19 -

*Whirlpool Corp. v. YiHangGou Trading Co*., No. 22-CV-341, 2021 WL 1837544 (E.D. Tex. May 7, 2021).................................................................................... - 19 -

**Statutes**

15 U.S.C. § 1114(1) ................................................................................. - 8 -

15 U.S.C. § 1116(a) ........................................................................ - 13 -, - 15 -

15 U.S.C. § 1117(a) ........................................................................ - 2 -, - 16 -

15 U.S.C. § 1125(a) ...............................................................- 4 -, - 12 -, - 13 -

TEX. BUS & COM § 16 ...................................................... - 2 -, - 13 -, - 16 -

**Rules**

Fed. R. Civ. P. 26 ..................................................................................... - 18 -

Fed. R. Civ. P. 4 ............................................... - 19 -, - 20 -, - 21 -, - 23 -

Fed. R. Civ. P. 65 ....................................................... - 6 -, - 18 -, - 24 -

**MOTION**

Shenzhen Sailvan Network Technology Co., Ltd. and Sailvan Times Co., Ltd ("Sailvan" or "Plaintiffs"), by undersigned counsels, jointly seek entry of an ex parte (1) Temporary Restraining Order, (2) Temporary Asset Restraining Order, (3) Expedited Discovery Order, and (4) Order for leave to effect service of the complaint, temporary restraining order, and a motion for preliminary injunction by email, against Defendants – the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" attached hereto (collectively, the "Defendants").

A Memorandum of Law in Support is filed concurrently with this Motion.

**MEMORANDUM OF LAW**

## I.   INTRODUCTION

Sailvan is known for high-quality products in clothing accessories, sports apparel, and home furnishing, owning multiple globally known brands including but not limited to the federally registered trademarks identified in Schedule B ("Sailvan Marks").

Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing or using counterfeits or confusingly similar imitations of one or more of Sailvan Marks without authorization within this district and throughout the United States by operating e-commerce stores on https://us.shein.com/ ("Shein") under their store identified in Exhibit A of the Complaint (the "Shein Stores"). Specifically, Plaintiffs have obtained evidence clearly demonstrating the following: (1) Defendants are engaged in the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiffs' branded goods; and (2) Defendants accomplish their sales of counterfeit and infringing goods via the Internet through the use of, at least, e-commerce stores operated via the Internet marketplace websites. Based on this evidence, Plaintiffs' Complaint alleges claims

for trademark counterfeiting and infringement and false designation of origin, under the Lanham Act and Texas Business and Commerce Code.

Defendants have and continue to wrongfully trade and capitalize on Plaintiff's reputation and goodwill and the commercial value of Plaintiffs' trademarks. By their activities, Defendants are defrauding Plaintiffs and the consuming public for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Plaintiff's trademarks.

In light of the inherently deceptive nature of the counterfeiting business, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. Both the Lanham Act and Texas Business and Commerce Code Practices allow Plaintiff to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a); TEX. BUS & COM § 16.102. To preserve that disgorgement remedy, Plaintiffs seek an *ex parte* order restraining Defendants' assets including specifically funds transmitted through Shein.

## II.     FACTUAL BACKGROUND

### A.  Plaintiffs' Trademark Rights

Plaintiffs are the owner of Sailvan Marks, the federally registered trademarks identified in Exhibit B attached to the Complaint. *See* . The Sailvan Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified in the registration certificates of the Sailvan Marks. Declaration of Qiao Chen ("Declaration of Chen") ¶ 10. The Sailvan Marks are symbols of Plaintiffs' quality, reputation, and goodwill and have never been abandoned. *Id.* ¶ 11. Moreover, Plaintiffs have expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. *Id.* ¶ 12.

Sailvan has sold products bearing Sailvan Marks to the U.S. market for more than a decade. *Id.* ¶ 13. Plaintiffs have extensively used, advertised, and promoted the Sailvan Marks in the United States, and have carefully monitored and policed the use of the Sailvan Marks. *Id.* ¶ 14. As a result of Sailvan's continuous efforts to promote brand awareness for Sailvan Marks, Sailvan Marks have received widespread recognition and accumulated commercial strength, including but not limited to, COOFANDY and EKOUAER's appearances at New York Fashion Week (2024), AVIDLOVE's participation in Milan and Paris Fashion Weeks (2025), ARSHINER's receipt of national parenting product awards, and ZEAGOO's long-standing market presence of over 11 years with a global customer base exceeding 20 million. Exhibit 1; Declaration of Chen ¶ 15. Sailvan Marks have developed strong goodwill and reputation among general consumers as well as professionals in the fashion industry. *See* Exhibit 1; Declaration of Chen ¶ 16.

Plaintiffs maintain high quality control standards for all of their products. Genuine Sailvan-branded products are distributed and sold exclusively through Plaintiffs' authorized distributors, legitimate retailers, and Plaintiffs' official websites. Plaintiffs also implement consistent policies to ensure satisfying post-sale customer service is provided on their official websites and authorized retail channels. The Sailvan Marks have come to symbolize the enormous goodwill of Plaintiff's products throughout the United States. *Id.* ¶ 13.

**B. Defendants Willfully Use Plaintiff's Trademarks Without Authorization**

Defendants do not have, nor have they ever had, the right or authority to use the Sailvan Marks for any purpose. *Id.* ¶ 20. Knowing their lack of authority to do so, Defendants are still promoting and otherwise advertising, distributing, selling or offering for sale, through their Shein Stores, counterfeiting goods bearing Sailvan Marks ("Infringing Goods"). *Id.* ¶ 19.

Given Defendants' blatant unauthorized use of Sailvan Marks, Defendants offered the Infringing Goods as authentic Sailvan products to consumers, free riding on the reputation and

goodwill established by Sailvan. By using the Sailvan Marks, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores and websites, and Plaintiff. Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Plaintiff irreparable harm and damage. Plaintiff is further suffering irreparable harm and damage by the incalculable profit Defendants are deriving by using Plaintiff's marks to drive consumers to the e-commerce stores operating under their Shein Stores.

Plaintiffs have never sold any products on Shein or authorized any third parties to sell on this platform. *Id.* ¶ 20. However, as part of its ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiff has identified extensive unauthorized sales of products bearing Sailvan Marks on Shein, where Defendants' have operated Internet based e-commerce stores under various store names and taken orders from Shein Stores for the purchase of various products bearing Sailvan Marks. *Id.* ¶ 21.

After reviewing the Infringing Products advertised for sale on the Shein, Plaintiff confirmed that imitation knockoffs were being offered for sale to residents of the United States and the State of Texas. *Id.* ¶ 25. Defendants sell or facilitate sales of Infringing Products prominently featuring Sailvan Marks so that they appear to unknowing consumers to be authorized listings selling genuine Sailvan Products and accept payment in U.S. dollars. *Id.* ¶ 26.

Due to the nature of Defendants' illegal counterfeiting activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiffs' brand reputation and goodwill. *Id.* ¶ 28. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of infringement. *Id.* ¶ 36. Plaintiffs' goodwill and reputation are

irreparably damaged when the Sailvan Marks are used on goods not authorized, produced or manufactured by the Plaintiff. *Id.* ¶ 37. The Infringing Products were not subject to quality control and inspection according to Plaintiff's stringent protocol. *Id.* Neither can consumers of the Infringing Products enjoy the high standard of customer service provided by Sailvan, whose business prioritizes customer needs and experience. *Id.* ¶ 38. Any negative customer complaint due to inferior quality of the Infringing Products or unsatisfactory customer service could damage brand value and consumer confidence, which may result in loss of future sales and market share. *Id.* ¶ 38. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable, neither calculable nor precisely compensable. *Id.* ¶ 39.

The extent to which Defendants have engaged in these tactics and the resultant instances of trademark infringement to promote the sale of Infringing Sales is substantial. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities. When any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of an online store that unlawfully uses a brand owner's trademarks to sell counterfeit products, the requested relief is rendered ineffective and meaningless, because counterfeiters operate as a proverbial "moving target," beyond the effective reach of the owners seeking to enforce their rights. *Id.* ¶ 44. On information and belief, most, if not all, Defendants are foreign e-commerce sellers that have no enforceable assets in the United States, other than funds deposited to their Shein accounts, which Defendant can easily move to their offshore bank accounts. *Id.* ¶ 45.

## III.    ARGUMENT

### A.  Plaintiff Is Entitled to *Ex Parte* Relief

Pursuant to Rule 65(b)(1), the Court may issue an *ex parte* temporary restraining order where specific facts in an affidavit clearly show that immediate and irreparable injury, loss, or

damage will result to the movant before the adverse party can be heard in opposition and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b). See Declaration of Chen ¶ 44.; see also Che Decl.¶¶ 7 - 10. The Supreme Court has made clear, an *ex parte* TRO should be limited to serving the underlying purpose of "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.*" Granny Goose Foods, Inc. v. Bd. Of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974); see *Better Keiki, LLC v. HOUSEWARE*, 18-cv-226, 2018 WL 3603065, at *1 (E.D. Tex. May 14, 2018) (granting temporary restraining order).

The entry of an *ex parte* temporary restraining order is both appropriate and necessary. It is appropriate because Plaintiff has a high likelihood of success on the merits and will suffer irreparable harm if relief is denied, and the balance of equities and the public interest favor an injunction. See Che Decl. ¶¶ 7 – 10. It will preserve the status quo until a hearing can take place. It is necessary because Defendants are based in foreign jurisdictions. Absent a temporary restraining order without notice, Defendants can and will likely continue their infringing activities by simply shutting down operations under their current aliases at issue on Shein and reappearing under new aliases on the same marketplace or on a new platform.

Furthermore, during this transition designed to conceive their true identities, Defendants are likely to transfer their wrongfully obtained assets to offshore bank accounts, making it exceedingly difficult, if not impossible, for Plaintiffs to recover damages or obtain meaningful relief. See Che Decl. at ¶¶ 7 – 11. In effect, Plaintiffs will be unable to obtain any meaningful recovery in this action if Defendants are given notice prior to the issuance of injunctive relief. Such notice would allow Defendants to take evasive actions, effectively rendering fruitless any further prosecution of this case. See *Dent Zone Network, LLC v. Heritage Admin. Co*., 4:03-cv- 195, 2003 WL 21183706, at *2 (E.D. Tex. May 21, 2003)

(observing that a plaintiff may obtain an *ex parte* restraining order if "a party threatens 'imminent destruction of the disputed property [or] its removal beyond the confines of the state …'").

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. See e.g. *Yang v. Doe 1 - 89*, No. 24-cv-922, at Dkt. 17 (E.D. Tex. Dec 4, 2024) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused defendants to secret or alienate funds); *Wearable Shoe Tree, LLC v. Does 1-601,* No. 24-CV-00334, at Dkt. 17 (E.D. Tex. May 3, 2024) (granting *ex parte* TRO enjoining 601 counterfeiters' assets).

As such, the *ex parte* nature of the request is essential to prevent Defendants from further evading accountability by concealing assets or continuing their unlawful activities under different identities. Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order to preserve the status quo further and prevent irreparable harm until the Court holds a hearing on these issues.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1).

To prove a *prima facie* case of trademark infringement, Plaintiffs must demonstrate that "(1) [they] possess a legally protectable trademark, and (2) [Defendants] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017); *Quantum Fitness Corp.*

*v. Quantum LifeStyle Centers, LLC*, 83 F. Supp. 2d 810, 816 (S.D. Texas 1999). It is undisputed that the Sailvan Marks are currently and properly registered with the U.S. Patent and Trademark Office, rendering them all legally protectable. See Complaint - Exhibit B (Dkt. No.1-[2]).

Likilihood of confusion is satisfied when defendants adopted a mark that is the same or confusingly similar, so that consumers likely will be confused about the proper origin of the goods or services, such that a consumer is likely to believe that defendant's goods or services are being sold with the consent or authorization of the plaintiff, or that defendant is affiliated with or connected to the plaintiff. See *Elvis Presley Enterpr. Inc, v. Capece*, 141 F.3d 188, 193 (5th Cir 1988). The Fifth Circuit has identified eight factors to consider when determining whether a likelihood of confusion exists: (1) the type of mark infringed; (2) the similarity at 193. between the marks; (3) the similarity of the products; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by potential purchasers. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Company*, 982 F.3d 280, 289 (5th Cir. 2020). No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these digits of confusion. *Elvis Presley Enterpr. Inc*, 141 F.3d at 193. In addition to the listed factors, a court is free to consider other relevant factors in determining whether a likelihood of confusion exists. *Id.* In this case, nearly all seven factors favor Plaintiffs:

First of all, Sailvan Marks are distinctive and well-known marks that warrant strong trademark rights. All Sailvan Marks are fanciful or arbitrary words, inherently distinctive and properly registered with the United States Patent and Trademark Office on the Principal Register. As members of a listed group, Sailvan is an industry leader with a strong global footprint, having achieved worldwide fame and almost instantaneous recognition within the

online retail fashion industry. Declaration of Chen ¶ 7. Therefore, Sailvan Marks are strong marks that warrant greater protection. See *Elvis Presley Enterpr*, 141 F.3d at 201,

On the second and third factors, the likelihood of confusion is likely because this case involves identical marks used on the same type of goods. The marks used on Defendants' Infringing Products are identical to Sailvan marks, as Defendants are seeking to trade on the goodwill of Sailvan Marks. Meanwhile, Sailvan Marks are registered on and used in connection apparel and clothing products, and Defendants' Infringing Goods fall under the exact same category and class of goods. Thus, these two factors favor Plaintiffs.

Regarding the fourth factor – similarity of parties' retail outlets and customers, the overall circumstance renders confusion likely. Although Plaintiffs have not operated on Shein, Plaintiffs have been selling Sailvan Marks products on competing e-commerce platforms, such as Amazon and Walmart Marketplace. Declaration of Chen ¶ 34. These platforms are highly similar to Shein, and consumers could be easily misled to believe that Sailvan has expanded its sales to Shein. *Id.* The target customers of both parties are the general consumers looking for affordable everyday wear. Thus, this factor favors Plaintiffs.

On the fifth factor, similarity of the advertising media, Plaintiffs mainly advertised on Amazon and Walmart Marketplace, as well as their own self-operated websites, but it appears that Defendants do not actively advertising the Infringing Products on Shein, despite their active listings. Declaration of Chen ¶ 35. This factor is irrelevant when infringers, passing off as authorized sellers of Plaintiffs, rarely advertised on their own but instead, relied on strength of Sailvan Marks. See *Elvis Presley Enterpr*, 141 F.3d at 195 ("the district court found that this digit of confusion was irrelevant to the determination of a likelihood of confusion … because [defendant] admits that it rarely advertises because of the strength of Plaintiff's marks…").

The sixth factor focuses on the Defendants' intent, which is not necessary but "may alone be sufficient to justify an inference that there is a likelihood of confusion." *Future Proof*

*Brands*, 982 F.3d at 289 (citing *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017)). In other words, if a mark was adopted with the intent to confuse the public, that alone may be sufficient to justify an inference of a likelihood of confusion. *Id.*; *Amstar Corp. v. Domino Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980). Here, Defendants are intentionally using the Sailvan Marks to confuse and deceive the consuming public into thinking that Defendants' counterfeit products are manufactured by or originate from the Plaintiffs. Defendants are purposefully attempting to benefit and trade off of Plaintiff's goodwill and reputation. Therefore, this factor regarding Defendants' intent also weighs heavily in Plaintiffs' favor.

The seventh factor – actual confusion is not necessary for Plaintiff to prove but constitutes "the best evidence of a likelihood of confusion). *Viacom International v. IJR Capital Investments, L.L.C.,* 891 F.3d 178, 197 (5th Cir. 2018). Furthermore, actual confusion can be inferred because Defendants are selling Infringing Products that use identical marks. Consumers are likely to be confused and believe that Defendants' products are genuine Plaintiff products or are sponsored or endorsed by the Plaintiff. This factor weighs in favor of Plaintiff.

Last but not least, courts also consider the degree of care exercised by potential customers. "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Bd. of Supervisors for La. State Agric. & Mech. College v. Smack Apparel*, 550 F.3d 465, 483 (5th Cir. 2008). Here, both Plaintiffs and Defendants sell affordable apparels targeting the general consumers, not expensive products targeting professional or institutional buyers. Cf. *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986). Thus, this factor also weighs against confusion.

In sum, it is clear that nearly all eight likelihood of confusion factors weighs heavily in favor of the Plaintiff, and, therefore, Plaintiffs have proved it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim. Thus, Plaintiffs

satisfy all these requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

a. *Plaintiffs Are Likely to Succeed on Its False Designation of Origin Claim under 15 U.S.C. § 1125(a)*

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1381 (5th Circuit 1996).

The fact that each Defendant uses at least one Sailvan Mark as the brand for their respective Infringing Product is to suggest that they sell authentic Sailvan products, a false and misleading statement that tends to deceive a substantial portion of the intended audience. This misstatement is material because a customer looking for genuine products from Sailvan and specifically searching for one of the Sailvan Marks online may end up purchasing Infringing Products that bear Sailvan Marks online. Defendants' unauthorized use of Sailvan Marks is likely to influence the consumers' decision-making process, making the deception material. All purchases influenced by Defendants' unauthorized use of Sailvan Marks diverted sales from Plaintiffs' authorized channels. Because Defendants' Infringing Products are offered at prices close to those for Plaintiffs' authentic products, Plaintiffs could have sold more products but for sales unfairly diverted by Defendants. Declaration of Chen ¶39. Any product defect of or customer complaint arising from Defendants' Infringing Products will likely damage Plaintiffs' goodwill and brand reputation. Plaintiffs' inability to exercise quality control over

the Infringing Products that bear Sailvan Marks and impose its heightened customer service requirements on Defendants.

Therefore, Plaintiffs have established a likelihood of success on the merits for Plaintiffs' false designation of origin claim under 15 U.S.C. § 1125(a).

b. _Plaintiffs Are Likely to Succeed on Its Texas Business and Commerce Code Claim_

In Texas, the same likelihood-of-confusion standard used for trademark infringement analysis also applies to Lanham Act and Texas statutory trademark infringement claim. _Viacom_, 891 F.3d at 185; _Scott Fetzer Co. v. House of Vacuums Inc._, 381 F.3d 477, 483-84 (5th Cir. 2004). Because Plaintiff has established a likelihood of success on the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendants under Lanham Act, and the standard is the same under Texas law, Plaintiff has established a likelihood of success on the merits under TEX. BUS. & COM. § 16.10.

### i. _Defendants' Actions Impose a Significant Risk of Irreparable Harm to Plaintiffs_

In December 2020, the Trademark Modernization Act codified a rebuttable presumption of irreparable harm if Plaintiff demonstrates a likelihood of success on merits in pursuing a temporary restraining order. 15 U.S.C. § 1116(a).

For reasons stated above, Plaintiffs have demonstrated a high likelihood of success on the merits of all trademark infringement claims.

### ii. _Balance of Equities Favors Plaintiffs_

Plaintiff has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Sailvan Marks. _See_ Declaration of Chen ¶ 11. Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will suffer additional losses and damage to its reputation. _Id._ ¶ 22. Defendants will therefore suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no right to engage in their present counterfeiting and infringement activities.

### iii.     Public Interests Favors a Temporary Restraining Order and a Preliminary Injunction

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off the Infringing Products as Plaintiffs' genuine goods. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 497 (E.D. Tex. 2020).

Further, the public interest is protected by issuing an injunction because Plaintiffs lose valuable incentives to provide high-quality products and maintain its customer service standard if it continues to be deprived of quality control over products bearing Sailvan Marks. It will be grossly unfair for trademark infringers to encroach upon the market share of brand owners who have spent significant time and resources to build up their brand names. Protecting Plaintiff's Sailvan Marks is consistent with, if not equivalent to, promoting the public interest.

## B.  Equitable Relief in the Form of Asset Restraint Is Appropriate and Necessary

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a).

### i.     An Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Sailvan Marks is Appropriate and Necessary

Plaintiffs request an order requiring Defendants to immediately cease all use of the Sailvan Marks or substantially similar marks, including on or in connection with all e-commerce stores, domain names, and websites owned and operated, or controlled by them. Such relief is necessary to stop the ongoing harm to Plaintiffs' trademarks and goodwill to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Sailvan Marks. Other courts within this Circuit have granted relief in similar cases involving the unauthorized use of intellectual

property rights. *PAAKline, LLC v. Dongguan Airuise Trading Co., Ltd.*, No. 1:22-cv-1082-LY, 2022 WL 18110060 (W.D. Tex. Nov. 29, 2022); *BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co.*, No. 1:22-cv-278-RP, 2022 WL 5568332 (W.D. Tex. Apr. 21, 2022*); Chanel, Inc. v. Partnerships & Unincorporated Ass'n Identified in Schedule A*, No. H-12-2085, 2012 WL 3527047 (S.D. Tex. Aug. 14, 2012).

To preserve the status quo, Plaintiffs seek an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Shein Stores being used and controlled by Defendants to other parties. Once they become aware of litigation against them, Defendants operating via the Internet can easily—and often do—change their ownership or modify e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Shein Stores, and thereby thwart the courts' ability to grant meaningful relief. See Declaration of Chen ¶ 43. Here, an interim order prohibiting Defendants from transferring their Shein Stores and domain names associated with these Shein Stores poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiffs full relief. Courts have granted this precise relief in this district and similar relief in actions where the relied-upon instrumentalities of infringement and contacts are e-commerce stores, domain names, and associated websites. See e.g., *PAAKline, LLC v. Dongguan Airuise Trading Co., Ltd.*, No. 1:22-cv-1082-LY, 2022 WL 18110060 (W.D. Tex. Nov. 29, 2022); *BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co.*, No. 1:22-cv-278-RP, 2022 WL 5568332 (W.D. Tex. Apr. 21, 2022*); Chanel, Inc. v. Partnerships & Unincorporated Ass'n Identified in Schedule A*, No. H-12-2085, 2012 WL 3527047 (S.D. Tex. Aug. 14, 2012).

### ii.   *An Order Preventing the Transfer of Unlawfully Gained Assets Is Appropriate*

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has

demonstrated above that it will likely succeed on the merits of its claims. As such, under the Lanham Act and Texas state law, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117(a); TEX. BUS & COM § 16.102. Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Plaintiffs respectfully request this Court grant additional *ex parte* relief, identifying payment accounts and restraining the transfer of all monies held or received by Shein, or other financial institutions for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto. See *Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed. Appx. 707 (5th Cir. 2007) (affirming district court's asset seizure as an equitable remedy in counterfeit enforcement action).

Moreover, Defendants are foreign counterfeiters operating from unknown locations generally outside this Court's jurisdiction. The ability of counterfeiters to practically eliminate evidentiary trails by conducting their businesses entirely over the Internet weighs heavily in favor of granting Plaintiff's requested relief. See *Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992).

For the foregoing reasons, equitable relief in the form of asset restraint that prohibits Defendants from continuing use of Sailvan Marks, transferring or modifying control or ownership over infringing Shein Stores, and transferring unlawfully gained assets, is an appropriate and necessary remedy.

### C. Plaintiffs are Entitled to Limited Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts have wide

latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2).

As demonstrated above, Plaintiff is being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of counterfeit Plaintiff products. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Shein Stores. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiffs respectfully request an *ex parte* order allowing expedited discovery to discover the bank and payment service accounts that Defendants use for their unlawful counterfeiting operations. The expedited discovery requested in the proposed order is limited to include only that which is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65. Plaintiffs are not aware of any reason that Defendants or third parties can not comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts, Plaintiffs' seizure and asset restraint Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that the expedited discovery be granted.

Thus, these third parties can comply with these discovery requests without undue burden.

### D. Service of Process by Email is Warranted in This Case

Pursuant to Rule 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any manner prescribed by Rule 4(f) for serving foreign individuals. Federal Rule of Civil Procedure 4(f)(3) allows a district court to authorize an alternative method for service to be effected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant. In the present matter, alternative service of process via e-mail is appropriate given that Defendants, who are likely foreign individuals or business entities, have established Internet-based businesses targeting the U.S. market relying on electronic communications for their operation. Accordingly, this Court should permit service on Defendants by e-mail.

### i. The Court May Authorized Service via Email and Website Posting Pursuant to Fed. R. Civ. P. 4(f)(3).

Rule 4(h) of the Federal Rules of Civil Procedure governs service of process on corporations such as Defendants. *See generally* Fed. R. Civ. P. 4(h). Pursuant to Rule 4(h)(2), service on a corporation at a place not within any judicial district of the United States is to be conducted in any manner prescribed by Rule 4(f) for serving an individual except for personal delivery under Rule (4)(f)(2)(C)(i). On information and belief, Defendants are foreign sellers operating outside the United States. Declaration of Chen ¶45.

Under Rule 4(f), service on a foreign defendant must comply with one of three provisions. Rule 4(f)(1) states service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Rule 4(f)(2) provides several methods of service to an individual in a country when there is no applicable international agreement. Rule 4(f)(3) permits a party to use an alternative method of service if

the party obtains permission of the court and the method is not otherwise prohibited by international agreement. *Id.*

In this case, Defendants do not make their physical addresses publicly available on Shein. Declaration of Chen ¶ 42. Because their addresses are unknown, the Hague Convention does not apply automatically. *Juan Yang v. Does 1-89*, NO. 4:24-CV-922-SDJ, at \*10 (E.D.Tex. December 4, 2024) (unpublished) (citing *RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238, 2012 WL 194388, at \*1 (E.D. Tex. Jan. 23, 2012)). It is also difficult to ascertain whether Defendants reside in a country to which no international agreement can be applied to. Thus, as long as Plaintiffs can obtain the permission of this Court to serve Defendants in a method not prohibited by an international agreement, the Rule 4(f) requirement is satisfied.

Although service by "other means" under Rule 4(f)(3) is considered alternative service, "Rule 4(f) does not create a hierarchy of preferred means of service, and service ordered pursuant to Rule 4(f)(3) is as favored as service available under [Rule 4(f)(1) and Rule 4(f)(2)]." *Gramercy Ins. Co. v. Kavanagh*, No. 3:10-CV-1254-D, 2011 WL 1791241, at \*1 (N.D. Tex. 2011). So long as the method of service is not prohibited by international agreement, this Court has considerable discretion to authorize an alternative means of service. *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text."). In fact, "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.*, 284 F.3d at 1014.

### ii. *The Proposed Alternative Service Comports with Due Process*

In addition, any service of process undertaken under Rule 4(f)(3) "must be consistent with procedural due process." *Whirlpool Corp. v. YiHangGou Trading Co*., No. 22-CV-341, 2021 WL 1837544, at \*2 (E.D. Tex. May 7, 2021). Due process requires that notice must be

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *RPost Holdings, Inc. v. Kagan*, No. 2:11- CV-238-JRG, 2012 WL 194388, at *2 (E.D. Tex. 2012) (citing *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 312 (1950) (internal quotation marks omitted));see also *Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. CIV.A. H-06-2683, 2007 WL 2964817, at *4 (S.D. Tex. 2007) (recognizing that service by email is permissible under Rule 4(f) of the Federal Rules of Civil Procedure when the court determines that it is reasonably calculated to notify the defendant of the pending lawsuit).

Under similar circumstances, courts frequently hold that service by electronic means is reasonably calculated to notify the Defendants. *See e.g.*, *Viahart, LLC. V. GangPeng*, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022) (affirming email service was reasonably calculated to notify defendants selling counterfeit products through online marketplaces); *Sino Star Global Ltd. v. Shenzhen Haoqing Technology Co., Ltd.*, 2023 WL 2759765, at *2 (E.D. Tex. April 3, 2023) (agreeing with Viahart); *DirectTV, LLC v. WNK Associates, Inc*., 2023 WL 2025039, at *3 (E.D. Tex. Feb. 15, 2023) (permitting service through direct messaging defendant's social media accounts); *Clarity Sports International, LLC v. Redland Sports*, 2021 WL 228896, at *3 (E.D. Mich. Jan. 22, 2021) (Service of process by email is reasonably calculated to give notice "[i]n cases where Defendants have conducted business online, via email, or other electronic means"); *Chanel, Inc. v. Zhibing*, 2010 WL 1009981, at *4 (W.D. Tenn. Mar. 17, 2020) ("effecting service on e-commerce merchants and their preferred e-mail addresses" had "greatest likelihood of generating a response from the served parties.").

Here, the most reasonably calculated means to notify Defendants of this action is for Plaintiffs to email Defendants' email addresses registered with Shein through which Defendants are alleged to be committing their infringing conduct.

### iii. Email Service Is Appropriate Pursuant to Fed. R. Civ. P. 4(f)(3) and Comports with Due Process Under the Special Circumstances of This Case

Electronic service is appropriate and necessary under the special circumstances of this case because Defendants (1) operate via the Internet and (2) primarily rely on electronic communications to operate their businesses and to communicate with Third Party Providers and customers, thereby demonstrating the reliability of email.

Federal courts have broad discretion to authorize service of process to individuals in foreign countries by any means not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13- CV-369, 2014 WL 11342502, at \*1 (W.D. Tex. 2014) (citing *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). Courts routinely uphold service by email in actions like this one—infringement actions against foreign online sellers who do not provide physical addresses in the public contact information section on their respective online marketplaces but conduct business through electronic communications. See, e.g., *Juan Yang v. Does 1-89*, NO. 4:24-CV-922-SDJ, (E.D.Tex. December 4, 2024) (unpublished) (authorizing alternative service of process via email against online sellers with unknown addresses); *Ouyeinc Ltd. v. Alucy*, No. 20-cv-3490, 2021 WL 2633317, at \*3 (N.D. Ill. June 25, 2021) (listing cases upholding email service of process in the Northern District of Illinois and elsewhere).

Shein maintains contact email addresses for sellers. *See* Declaration of Chen ¶ 42. Should the Court grant the proposed Temporary Restraining Order, Plaintiff will provide Third Party Providers with notice of the Order for obtaining contact email addresses of Defendants from Third Party Providers, and quicky effectuate email service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. See Che Decl. ¶\*. Accordingly, each Defendant will be

provided with notice of this action electronically via email. See Id. Thus, Plaintiffs request leave to effect alternative service under Rule(4)(f)(3) to serve Defendants by emailing their email addresses registered with Shein.

Plaintiffs respectfully suggest an order authorizing email service would benefit the parties and the Court, as it facilitates swift service and the ability to move this action forward expeditiously.

## IV.    A MINIMAL BOND IS SUFFICIENT TO SECURE THE INJUNCTION

Federal Rule of Civil Procedure 65(c) provides that a preliminary injunction can issue only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).  The amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court, and the trial court "may elect to require no security at all." See *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (internal quotation marks omitted).

Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting and infringement, Plaintiffs respectfully request this Court require it to post a bond of no more than ten thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. *See, e.g.*, *Juan Yang v. Does 1-89*, NO. 4:24-CV-922-SDJ, (E.D.Tex. December 4, 2024) (unpublished) ($5,000 bond).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the *proposed ex parte* motion in favor of Plaintiffs, entering (1) temporary restraining order, (2) asset restraining order, (3) expedited discovery order, and (4) alternative service via email order.

Dated July 7, 2025                    Respectfully submitted,
                                       By:*/s/ Shaoyi Che*

Shaoyi Che
(che@yzlaw.com)
Zhongyi Huang
(huang@yzlaw.com)
Tianqin Zhao
(zhao@yzlaw.com) (*pro hac vice* pending)

YoungZeal LLP
9355 John W. Elliott Dr, Ste 25555
Frisco, TX 75033
Telephone: (717) 440-3382