IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SHENZHEN SAILVAN NETWORK TECHNOLOGY CO., LTD., et al., § § § Plaintiffs, § § v. § DOES 1–101, § § Defendants. § § § § § | Case No. 4:25-cv-722-JDK |

**ORDER GRANTING PRELIMINARY INJUNCTION**

This is a trademark case. Plaintiffs assert that their trademarked brands are being infringed and counterfeited by various entities that sell products using their trademarks through the online marketplace Shein. Plaintiffs filed an ex parte motion for a temporary restraining order ("TRO") (Docket No. 8), and the Court granted the motion (Docket No. 14). Plaintiffs have moved to convert the TRO into a preliminary injunction. Docket No. 21.

As explained below, the Court finds that Plaintiffs are entitled to a preliminary injunction and therefore **GRANTS** the motion (Docket No. 21).

I. BACKGROUND

Plaintiffs Shenzhen Sailvan Network Technology Co., Ltd., and Sailvan Times Co., Ltd., are in the clothing, accessories, sports apparel, and home furnishing business and hold several federally registered trademarks for multiple brands. Docket No. 4 ¶¶ 15–17. Plaintiffs' trademarks at issue are ARSHINER, AVIDLOVE, COOFANDY, EKOUAER and ZEAGOO (herein, "Sailvan Marks"). *Id.* ¶¶ 15–16.

Plaintiffs design, manufacture, market, and sell fashion and lifestyle products under these trademarks throughout the world, including within the Eastern District of Texas. *Id*. ¶ 19. Plaintiffs have invested substantially in marketing their products, brand development, and customer engagement to be "prominent symbols of consistent quality and distinctive style within their industries." *Id*. ¶ 21.

Plaintiffs' trademarks have received widespread recognition, including COOFANDY and EKOUAER appearing at the 2024 New York Fashion Week, ARSHINER's receipt of national parenting product awards, and ZEAGOO's market presence of more than eleven years "with a global customer base exceeding 20 million." *Id*. ¶ 22. Plaintiffs state they do not operate or sell products on the large online marketplace, Shein.com ("Shein"), and have never granted authorization to any of the Defendants to use Plaintiffs' trademarks. *Id*. ¶ 41; Docket No. 8 at 9. Plaintiffs also assert that they maintain high quality control standards for all their products and ensure satisfying post-sale customer service, allowing Plaintiffs to develop a reputation and goodwill. Docket No. 4 ¶¶ 23–24. Plaintiffs' legal manager, Qiao Chen, filed a declaration testifying to these facts. Docket No. 8-2.

Defendants are 93 individuals or entities (Plaintiffs have voluntarily dismissed eight Defendants (Docket Nos. 25; 27)) that promote, sell, offer for sale, and distribute counterfeit goods bearing Plaintiffs' trademarks on Shein. Docket No. 4 ¶¶ 26, 31; Docket No. 4-1 (listing the webstore names, store codes, item numbers and store URLs). Plaintiffs have identified specific instances in which products bearing Sailvan Marks were listed on Shein storefronts operated by Defendants. Docket No. 8-2 ¶ 21.

Plaintiffs assert these product listings involved imitation goods offered for sale and sold to United States consumers, *id.* ¶ 25; while Plaintiffs believe that Defendants operate in foreign jurisdictions, primarily China, Docket No. 4 ¶ 33, Defendants sell their products to consumers in the Eastern District of Texas, Docket No. 8-2 ¶ 4.

Through their investigation into the sale of counterfeit and infringing products, Plaintiffs discovered "unauthorized sales of products bearing [Plaintiffs'] trademarks on Shein." Docket No. 8 at 4. Plaintiffs contend that, through Defendants' unauthorized use of their trademarks, Defendants offered their products as "authentic" products to consumers, "free riding on the reputation and goodwill established by" Plaintiffs. *Id.* at 3. Plaintiffs assert that none of the products sold by Defendants are subject to Plaintiffs' "stringent protocol." *Id.* at 5. And as a result, Plaintiffs explain, their brands are suffering "largely unquantifiable" harm to their reputation, good will, and financials due to "possible diversion of customers" and "loss in brand confidence." *Id.* at 4–5. Below is an example of Defendants' use of one of the Sailvan Marks on their webstore and on a short description. Docket No. 9-94.



Plaintiffs filed this suit on July 7, 2025, claiming trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114, unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), and trademark infringement in violation of Texas Business and Commerce Code § 16.102. Docket No. 4. The Court granted Plaintiffs' motion for a TRO, which (1) temporarily enjoined Defendants from using or otherwise infringing on Plaintiffs' trademarks (Docket No. 14 at 12), (2) temporarily restricted the transfer of Defendants' assets pending a final judgment (*id.* at 13), (3) expedited discovery to permit Plaintiffs to obtain Defendants' bank and

4

payment systems to better identify each Defendant (*id.* at 14), and (4) allowed Plaintiffs to use alternative service by email (*id.* at 16).

In the instant motion, Plaintiffs ask the Court to convert the TRO into a preliminary injunction. Docket No. 21. The Court held a preliminary-injunction hearing on August 28, 2025. Plaintiffs' counsel presented argument and evidence in support of Plaintiffs' motion for preliminary injunction. Plaintiffs further showed that, in accordance with the Court's order allowing alternate service, Defendants were served by email with: the complaint, summons, Order granting the TRO and extension of TRO, Plaintiffs' motion for Preliminary Injunction[1], and notice that the Court scheduled an in-person hearing on that motion on August 28, 2025. Docket No. 23-3. No Defendant has appeared before the Court or submitted any response to this suit or the request for injunctive relief.

## II. PRELIMINARY INJUNCTION

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (per curiam). To obtain a preliminary injunction, Plaintiffs must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that

---

[1] Courts have increasingly permitted emailed notice of a motion for preliminary injunction. *See, e.g.*, *Yang v. Does* 1-89, No. 4:24-cv-922-SDJ, 2024 WL 5190362, at *1 (E.D. Tex. Dec. 20, 2024) (Jordan, J.) (noting that email notice of a motion for preliminary injunction provided a sufficient opportunity for all defendants to respond); *see also id.* at *1 n.1 ("Both the Fifth and Ninth Circuits have approved this method of service for preliminary injunctions.") (citing *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536 (5th Cir. 2023) and *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process.")).

will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016); *see also* Federal Rule of Civil Procedure 65 (governing preliminary injunctions). The Fifth Circuit has stressed that the "first factor—likelihood of success on the merits—is 'the most important.'" *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (en banc) (citing *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023)). The Court takes each element in turn below.

### A. Likelihood of Success on the Merits

The Lanham Act defines a trademark as "any word, name, symbol, or device, or combination thereof" that is used "to identify and distinguish . . . goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. To succeed on a trademark infringement claim under the Lanham Act, Plaintiffs must demonstrate that they "(1) possess[] a legally protected trademark and (2) the defendant[s'] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citation omitted); *see Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 543 (5th Cir. 2023). "To be legally protectable, a mark must be 'distinctive' in one of two ways": (1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning. *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). Registration of a plaintiff's marks with the U.S. Patent and Trademark Office ("PTO") is "prima facie evidence that the marks are inherently distinctive." *Id.*

6

Plaintiffs are likely to succeed on their trademark infringement claim. First, Plaintiffs submitted evidence that their trademarks are currently and properly registered with the PTO. Docket No. 4-2. Plaintiffs' trademarks are therefore legally protectable. *See Nola Spice Designs*, 783 F.3d at 537.

Second, Plaintiffs have shown that Defendants' use of their trademarks creates "a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys.*, 851 F.3d at 450. To determine the "likelihood of confusion," courts consider a non-exhaustive list of factors:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,]' . . . [and] (8) the degree of care exercised by potential purchasers.

*Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019); *see also Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Streamline Prod. Sys.*, 851 F.3d at 453 (citation omitted). Here, the factors related to this element weigh in Plaintiffs' favor. The first factor is measured by the "strength" of the trademark. *Id.* "The more distinctive the mark, the more likely that consumers will be confused by competing uses of the mark." *Id.* at 454. Plaintiffs argue that all their marks are "distinctive and well-known marks that warrant strong trademark rights." Docket No. 8 at 8. Specifically, they argue that all their trademarks are fanciful or arbitrary words. *Id.* at 8. Arbitrary marks use a common word in an unfamiliar way, and a fanciful mark

is not a real word, "but is invented solely for the purpose" of the trademark. *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 460 n.7 (5th Cir. 2003). Both are inherently distinctive and entitled to protection. *Id.* The trademarks at issue here are not real words, or at the very least, are arbitrary. *See* Docket No. 8 at 3, 8 (trademarks names are COOFANDY, EKOUAER, AVIDLOVE, ARSHINER, ZEAGOO). Thus, this factor contributes to the likelihood of confusion.

The second and third factors also weigh in Plaintiffs' favor. Specifically, the alleged violations include identical names used on the same type of goods. *See* Docket Nos. 9-1–9-101. In each of the photographs offered by Plaintiffs, the same letters in Plaintiffs' trademarks are being used by Defendants in their goods' descriptions. *See id.* As to the fourth and fifth factors, both parties exclusively use online marketplaces to sell their products. Docket No. 8 at 9. Although Plaintiffs do not sell on Shein, they sell on similar competing e-commerce platforms that are very similar to Shein. *Id.* The sixth factor, intent, is "not necessary to a finding of likelihood of confusion," so the Court limits its focuses on the other relevant factors. *Streamline Prod. Sys.*, 851 F.3d at 455.

The last two factors likewise weigh in Plaintiffs' favor. For the seventh factor, "a reasonable inference of actual confusion exists given that Defendants are selling identical or nearly identical products." *Mighty Mug, Inc. v. 28ceramics*, 2022 WL 22870172, at *3 (W.D. Tex. Mar. 8, 2022). Defendants here are using Plaintiffs' trademarks to sell clothing and other items that are identical or nearly identical to Plaintiffs' products. Docket No. 9-1–9-101. And lastly, "consumers could be duped

by Defendants' identical or nearly identical products." *Mighty Mug*, 2022 WL 22870172, at *3. Price is also important for the level of care a potential customer will use to purchase the products. "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008). Here, Defendants' products are offered at a similar price to Plaintiffs' authentic products, and both are relatively inexpensive products. Plaintiffs have therefore successfully demonstrated the elements required for likelihood of success on a trademark infringement claim.

### B. Irreparable Harm

Plaintiffs must next show that Defendants' alleged infringement puts Plaintiffs at a substantial risk of irreparable harm. Under the Lanham Act, irreparable harm is presumed in cases of trademark infringement when there is a likelihood of confusion. Pub. L. No. 116–260, § 221(a), 134 Stat. 1182, 2208 (December 27, 2020) (amending 15 U.S.C. § 1116(a) (A plaintiff is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . in the case of a motion for a preliminary injunction or temporary restraining order.")); *see also Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed."). Even if no such presumption existed, a plaintiff's "lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury,

regardless of the actual quality of those goods or services." *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs.*, LLC, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999).

For the reasons stated above, Plaintiffs will likely suffer a substantial risk of irreparable harm if an injunction is not granted.

### C. Balance of the Equities and Public Interest

The Court next balances the hardships between the parties. Plaintiffs expended considerable "time, resources, and capital" to both develop and protect the Sailvan Marks. *See* Docket No. 21 at 9. On the other hand, Defendants' only harm would be their having to stop infringing Plaintiffs' trademarks. And "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business." *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008). The balance thus favors Plaintiff. *See Shenzhen Sanlida Elec. Tech.*, 80 F.4th at 546 (holding that "loss of market shares, immediate and almost complete loss of revenue stream from the sale of products, interruption of the normal course of business . . . and loss of invested capital" were merely pecuniary and presumptively reparable harms).

Furthermore, an injunction must be in the public interest. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1380 (Fed. Cir. 2024). Enforcing trademark law serves the public interest. *See Mr. Elec. LLC v. Di Carlo*, 2018 WL 4178336, at *1 (W.D. Tex. July 23, 2018); *Shenzhen Sanlida Elec. Tech.*, 80 F.4th at 543 ("Finally, although we recognize that the public has an interest in encouraging commercial competition, the public also has an interest in the effective enforcement

of our trademark laws."). The public interest, moreover, is "always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Denbra IP Holdings, LLC v. Thornton*, 521 F. Supp. 3d 677, 690 (E.D. Tex. 2021) (quoting *Sparrow Barns & Events, LLC v. Ruth Farm Inc.*, 2019 WL 1560442, at *10 (E.D. Tex. Apr. 10, 2019)). Therefore, the public interest favors granting a preliminary injunction.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Shenzhen's motion for preliminary injunction. Docket No. 21.

The Court hereby **ORDERS** that, as of the date of this Order, Defendants and their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert or participation with them are **ENJOINED** from:

1. Using, reproducing, or displaying any of Plaintiffs' registered trademarks identified in Schedule B to the Complaint (the Sailvan Marks), or any reproduction, counterfeit, copy, or colorable imitation of the Sailvan Marks, in connection with the distribution, marketing, advertising, or offering for sale of any product not authorized by Plaintiffs.

2. Manufacturing, importing, shipping, delivering, holding for sale, transferring, distributing, returning, or otherwise disposing of any products or inventory not manufactured by or for Plaintiffs, or authorized by Plaintiffs, that bear the Sailvan Marks or any mark confusingly similar thereto.

3. Using any false designation of origin or false description, or engaging in any act which is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, sponsorship, or approval of Defendants' products with or by Plaintiffs.

4. Moving, relocating, transferring, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, funds held by Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok, Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union, until further order of this Court.

5. Removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' e-commerce stores, websites, assets, or operations, or relating in any way to the infringement of the Sailvan Marks.

It is further **ORDERED** that:

1. Each Defendant, within fourteen (14) days after receiving notice of this Order, shall serve on Plaintiffs a written report under oath providing:

    a. Their true name and physical address;

    b. All websites and online marketplace accounts on any platform that they own and/or operate;

    c. All of their associated financial accounts;

    d. The quantity of products sold using the Sailvan Marks;

   e.  The location where each such product was shipped; and

   f.  The steps taken by each Defendant to comply with this Order.

2. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be enjoined from transferring, disposing of, or secreting any money, stocks, or other assets of Defendants until further ordered by this Court.

3. All Third-Party Providers, including but not limited to, JP Morgan Chase Bank, Citibank, and those listed above, within seven (7) calendar days of receipt of this Order, shall:

   a.  Locate all accounts and funds connected to the Defendants identified in Exhibit A;

   b.  Restrain and enjoin the transfer of any funds from such accounts until further order of this Court; and

   c.  Provide Plaintiffs with information concerning any fund transfer records, including detailed recipient information.

4. This Order shall apply to the infringing webstores, websites, and any additional domain names or e-commerce stores properly brought to this Court's attention and verified by sworn declaration as being used by Defendants for the purpose of infringing the Sailvan Marks.

5. As with the temporary restraining order issued in this case (Docket No. 14), again exercising its discretion pursuant to *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302–03 (5th Cir. 1978), this Court finds that

Plaintiffs' proper security amount required for issuance of this Order under Federal Rule of Civil Procedure 65 is $5,000.

So **ORDERED** and **SIGNED** this **3rd** day of **September, 2025.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE